**(115 So. 757)**

**No. 27828.**

**COONS SILO & BUILDING CO.'S RECEIVER v. VAN HORN.**

Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

**1. Evidence ⬅182—Testimony as to contents of lost minutes of stockholders' meeting, without showing they were written and signed by authorized person, held inadmissible.**

In action to recover on alleged stock subscription, parol evidence of attorney that lost minutes of meeting of corporation's organizers, members, and directors, showed that defendant was elected director and vice president of cor-

165 LA.—19

poration, without evidence that such minutes were in fact minutes of such meeting and written and signed by some authorized person, was inadmissible.

**2. Corporations ⬅90(6)—Evidence that defendant subscribed to stock held insufficient to support judgment for plaintiff suing on stock subscription agreement.**

In action against alleged subscriber on stock subscription agreement, evidence that defendant subscribed to stock *held* insufficient to support judgment for plaintiff.

Appeal from Civil District Court, Parish of Orleans; M. M. Boatner, Judge.

Action by George St. Paul, receiver of the Coons Silo & Building Company, against Albert C. Van Horn. From a judgment for plaintiff, defendant appeals. Judgment annulled, plaintiff's demand rejected, and suit dismissed.

Gordon Boswell and Henry W. Robinson, both of New Orleans, for appellant.

Herbert W. Kaiser and Thomas Tomeny, both of New Orleans, for appellee.

O'NIELL, C. J. The defendant has appealed from a judgment rendered against him for $2,500, with legal interest from the 10th of November, 1920, on an alleged subscription for stock in a corporation styled Coons Silo & Building Company, Inc.

The defendant's subscription was for stock in a corporation to be organized under the name Coons Cypress Silo & Lumber Company, Inc. The instrument representing the subscription contained numerous conditions, among which was that the corporation should buy the factory of the Coons Cypress Silo Company, at Patterson, La., together with its stock on hand, book accounts, good will and established business, and the patent rights of O. A. Coons, and move the factory to New Orleans, and there engage in manufacturing silos and ready-cut houses. Before the charter was signed it was discovered by the subscribers, or made known by O. A. Coons, that

the Louisiana Red Cypress Company, in New Orleans, held a claim against the silo factory in Patterson and against Coons' patent rights, for a large sum—said to be $50,000—and the price demanded for the factory and patent rights was more than the organizers of the proposed corporation were willing, or could afford to pay. They held several meetings, at one of which the project of incorporating the Coons Cypress Silo & Lumber Company, Inc., was abandoned, and the promoters then undertook to organize another corporation, to be called the Coons Silo & Building Comany, Inc., not for the purpose of buying the Patterson factory, but to build a factory in New Orleans and engage in manufacturing silos and ready-made houses. Inasmuch as the new plan of incorporation, and its objects and purposes, were different from those originally intended, it was agreed among the promoters that the subscribers for stock in the first proposed Coons Cypress Silo & Lumber Company, Inc., would not be bound to take stock in the then proposed Coons Silo & Building Company, Inc. New stock subscriptions were solicited and obtained, some from outsiders and some from the original subscribers; but the defendant, Van Horn, did not subscribe for stock in the proposed Coons Silo & Building Company, Inc. The charter was signed on the 4th of December, 1919, and recorded on the 17th of that month. For want of sufficient capital, the enterprise died in its infancy.

It is alleged in the plaintiff's petition that, at a meeting of the members of the Coons Silo & Building Company, Inc., held on the 30th of December, 1919, the defendant, Van Horn, was elected a member of the board of directors and vice president of the corporation, and was appointed on a committee to buy machinery for the company, and that he "took an active part therein." Hence it is claimed that the defendant tacitly consented to convert his subscription for 25 shares of stock in the Coons Cypress Silo & Lumber Company, Inc.—which was never incorporated—into a subscription for 25 shares of stock in the Coons Silo & Building Company, Inc.

The defendant denies that he was ever elected or ever served or acted as a director or as an officer of the Coons Silo & Building Company, Inc., or was ever appointed or ever served on any committee for the corporation, or ever took part in its affairs; and he urges other defenses, which, however, we find it unnecessary to consider.

[1] The minutes of the meetings of the organizers and members and of the directors of the corporation were lost. The only evidence to sustain the allegation that the defendant was elected a director and vice president of the corporation—and that he was appointed on a committee to buy machinery—at a meeting of the stockholders held on the 30th of December, 1919, was the testimony of the attorney who drafted the petition in this suit, and who withdrew as attorney because of his having to testify in the case. He testified that, when he drafted the petition, he had before him what purported to be the minutes of that meeting, having received them from the receiver of the corporation; and that the minutes recited what he alleged in the petition. He had no other knowledge of what had transpired at the meeting. The defendant's attorneys objected to his testimony on the ground that it was secondary evidence, but the objection was overruled on the ground that the minutes of the meeting were lost. The witness did not say who had written or signed the minutes, or say that they were signed by any one; and there was no other evidence offered to show the authenticity or genuineness of the minutes. If the minutes themselves could have been produced, they would not have been admissible without being first identified and duly authenticated by

proof that they were written or signed by the proper officer of the corporation. The minutes being lost, the testimony of the witness who had seen and read them was the best evidence available, and was admissible; but, being offered in lieu of the minutes themselves, this secondary evidence was also subject to the rule which we have stated; that is, that the writing which the witness saw and read should have been identified and authenticated by some proof that the writing was done or signed by the proper officer of the corporation. No evidence whatever was offered on that subject, except the statement of the witness that what purported to be the minutes of the meeting held on the 30th of December, 1919, was given to him by the receiver of the corporation.

"In order to render the books and records of a corporation admissible in evidence, they must be duly authenticated and identified as such, and it must be made to appear that they are the books of the corporation, kept as such by the proper officer, or some other person authorized in his absence. The secretary, or the person performing the duties of secretary, being usually the proper custodian of the books and records of a corporation, is generally the proper person by whom to prove their authenticity; but authentication by some other officer, or even by any person who saw the entries in question made, has been regarded as sufficient. It is not sufficient to prove the book to be in the handwriting of a person who is stated in the book itself to be the secretary, but who is not otherwise shown to be the proper officer to make or keep the record." 22 C. J. 900, § 1096.

"The same requirements must be complied with before introducing secondary evidence of the contents of an instrument which is beyond the jurisdiction of the court. Parol evidence is, of course, competent to show the existence, execution and genuineness of an instrument, with a view of introducing secondary evidence of its contents after the grounds for the reception of such evidence have been shown, and the same is true where it is sought to show for this purpose the former existence of a record." 22 C. J. 1043, 1044, § 1341.

Our conclusion is that the parol evidence of what the document purporting to be the minutes of the meeting showed was not admissible without any evidence whatever that what purported to be the minutes of the meeting were in fact the minutes and were written or signed by some authorized person. Assuming, for the sake of argument, that the testimony of the witness—who is a very honorable member of the bar—was admissible, we have no doubt about the truth of his statement that the memorandum, from which he drafted the allegation in his petition, was handed to him by the receiver and was said to have been found among the records and papers of the defunct corporation; but it would be assuming too much, and would be violative of the rule of evidence which we have quoted, to assume, without any proof of the fact, that the memorandum was a genuine and authentic record of what actually transpired at a meeting of the stockholders or directors of the corporation. No other witness testified that the defendant was ever elected vice president or a director of the corporation, or that he was appointed a member of, or served upon, any committee, or ever took part in the affairs of the corporation.

[2] The defendant testified emphatically that he had no notification or knowledge of having been elected a director or an officer of the corporation, or of having been appointed on any committee; and that he took no part in the affairs of the corporation, and withdrew and made known his withdrawal by a letter written to the promoter of the enterprise as soon as the organizers abandoned their first intention and proposed to organize the corporation under another name and with other and different objects and purposes. The defendant's testimony is corroborated in that respect by that of a stock salesman who received and read the defendant's letter and turned it over to his employer, the promoter of the enterprise. The stock salesman and another witness, who was one of the

subscribers and was sued as such, also corroborated the defendant in his testimony that he openly avowed his withdrawal and did not attend another meeting of the organizers or stockholders or directors of the corporation after its name and objects were changed. The stock salesman had attended every meeting and the other witness had attended almost if not quite every meeting of the organizers and stockholders and directors of the corporation.

The attorney who drafted the petition in this case, and who, as we have said, afterwards withdrew his name as attorney for the plaintiff, was also one of the original subscribers who refused to have their subscriptions transferred or converted into subscriptions for stock in the new corporation, styled Coons Silo & Building Company, Inc. He testified that he had met the defendant on numerous occasions, on the street and elsewhere, before and after the promoters proposed to change the name and objects of the proposed corporation, and that the defendant always spoke enthusiastically about the prospects of the corporation and indicated that he intended to remain and had remained as one of the subscribers and stockholders of the corporation. The defendant denied that he had expressed any such intention after the promoters had changed the name and objects of the proposed corporation. Considering that the witnesses were testifying about conversations which had taken place six years before they gave their testimony, it is not improbable that the witness for the plaintiff was mistaken as to the period in which the defendant was displaying his enthusiasm about the prospects of the proposed corporation.

Our conclusion is that the preponderance of the evidence is in favor of the defendant.

The judgment is annulled, and the plaintiff's demand is rejected and the suit dismissed at the cost of the receivership.